# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 27, 2008

Charles R. Fulbruge III
Clerk

No. 06-70052

JOSEPH RAY RIES,

Petitioner - Appellant,

v.

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal
Justice, Correctional Institutions Division,

Respondent - Appellee.

Appeal from the United States District Court
For the Eastern District of Texas

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this death penalty case, petitioner-appellant Joseph Ray Ries, a Texas
state prisoner, appeals the district court's denial of his petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court
conviction for capital murder and his sentence of death.

Ries raises four issues. First, Ries argues that the district court erred in
determining that two of his Sixth Amendment claims for ineffective assistance
of counsel were not exhausted and thus procedurally barred. Second, he argues
that his attorneys at trial were ineffective in their presentation of mitigation
evidence during the penalty phase of his trial. Third, Ries argues that his trial
attorneys were ineffective for failing to object to several statements in the

prosecutor's closing argument. Finally, he argues that his appellate counsel was ineffective for failing to raise on appeal a claim that the district court erred in redacting statements of remorse from a video-taped confession by Ries.

For the following reasons, we AFFIRM the judgment of the district court.

I

Ries was convicted of capital murder in Texas state court for intentionally causing the death of Robert Ratliff by shooting him in the course of a burglary. TEXAS PENAL CODE § 19.03(a)(2). The Texas Court of Criminal Appeals summarized the evidence supporting Ries's conviction as follows:

> The evidence showed that [Ries] first met Robert Ratliff, the victim, in the fall of 1998. They formed a friendship, and at some point, [Ries] moved in to live with Ratliff. However, there was later a dispute about missing property, and [Ries] was evicted from Ratliff's house. On February 18, 1999, [Ries] and several associates stole a pickup truck from Ratliff's residence. [Ries] and Christopher White drove to San Antonio in the truck, but because the pickup did not get good gas mileage, they decided to return to the Ratliff residence and take a Lincoln Continental. They arrived at Ratliff's place on the evening of February 21st, but neither Ratliff nor his Lincoln Continental was present. [Ries] and White broke into the house and took some items, including two .22 rifles. Later that evening, they drove the pickup into a pond, so that the truck was completely submerged. Hiding behind a barn, they watched Ratliff come home and waited until the lights in the house were turned off (approximately thirty minutes later).

> [Ries] and White then entered the house. [Ries] sneaked into Ratliff's bedroom and took the victim's wallet and car keys. Before exiting the room, [Ries] shot Ratliff in the back as he slept in bed. The victim then awoke, and [Ries] shot him in the neck. Hearing the noise, White entered the room and asked what had happened. [Ries] sent White out of the room and fired one last, fatal shot behind the victim's ear. [Ries] and White then took the Lincoln Continental and drove away.

Ries v. State, No. 73, 737, at 2–3 (Tex. Crim. App. June 12, 2002). Following the penalty phase of the trial, based on the jury's answers to the Texas special sentencing issues, the trial court sentenced Ries to death.

The Court of Criminal Appeals affirmed Ries's conviction and sentence on direct appeal. Ries did not seek certiorari review. Subsequently, Ries filed a state post-conviction application for a writ of habeas corpus, which the Court of Criminal Appeals denied. Ries filed this petition for federal habeas relief, which the district court denied. See Ries v. Quarterman, No. 1:04-CV-367, 2006 WL 3147384 (E.D. Tex. Oct. 31, 2006). Ries timely filed his notice of appeal, and the district court granted a Certificate of Appealability on all of Ries's claims.

II

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." Thompson v. Cain, 161 F.3d 802, 805 (5th Cir. 1998).

Because Ries filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the district court's federal habeas review was governed by AEDPA. Under AEDPA, habeas relief is not available to a state prisoner

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Under AEDPA, our duty is to determine whether the state court's determination was contrary to or an unreasonable application of clearly

established federal law as determined by the Supreme Court at the time that [Ries's] conviction became final" in 2002.[1] Nelson v. Quarterman, 472 F.3d 287, 293 (5th Cir. 2006) (en banc) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000)); Peterson v. Cain, 302 F.3d 508, 511 (5th Cir. 2002) ("[F]ederal habeas courts must deny relief that is contingent upon a rule of law not clearly established at the time the state conviction becomes final.").

A state court decision is contrary to clearly established Supreme Court precedent if: (1) "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams, 529 U.S. at 405–06. A state court decision is an unreasonable application of clearly established Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407–08. The inquiry into unreasonableness is objective. Id. at 409–10.

A state court's incorrect application of clearly established Supreme Court precedent is not enough to warrant federal habeas relief; such an application must also be unreasonable. Id. at 410–12. The state court's factual findings are presumed to be correct, and the habeas petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

III

---

[1] A state conviction becomes final when the time for direct review has expired, regardless of when the state court issues its mandate. See Flores v. Quarterman, 467 F.3d 484, 485 (5th Cir. 2006) (per curiam) (citing Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003)). Here, Ries's conviction and sentence were affirmed on direct appeal on June 12, 2002. Because Ries did not seek certiorari review, his conviction became final ninety days later, following the expiration of the time to seek such review. Roberts, 319 F.3d at 694.

Ries first argues that the district court erred in dismissing two of his claims for failure to exhaust. In his state habeas petition, Ries claimed that his trial counsel provided ineffective assistance under the Sixth Amendment for failing to "effectively marshal" and to "present" mitigating evidence during the penalty phase of his trial. In his federal habeas petition, Ries asserted the broad claim that trial counsel failed adequately to present the defense's case on mitigation of punishment. Ries sub-divided this broad claim into three distinct claims, each focusing on a particular phase of his state trial: (1) trial counsel was ineffective in failing to voir dire the jury panel on mitigating evidence; (2) trial counsel was ineffective in the presentation of mitigating evidence during the penalty phase of the trial; and (3) trial counsel was ineffective in arguing the case for mitigation in closing, following the penalty phase of the trial.

The district court concluded that only Ries's second sub-claim, that trial counsel was ineffective in the presentation of mitigation evidence during the penalty phase of the trial, was fairly presented to the state courts. The district court determined that Ries's first and third sub-claims were not fairly presented to the state courts and, as a result, were unexhausted and procedurally barred. Ries argues that his state claim necessarily invited scrutiny of all aspects of counsel's trial performance with respect to mitigation and thus the district court erred in concluding that his first and third claims were unexhausted.

Pursuant to 28 U.S.C. § 2254(b)(1)(A), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." See Moore v. Quarterman, 491 F.3d 213, 220 (5th Cir. 2007). "The exhaustion requirement 'is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Id. (quoting Anderson v. Johnson, 338 F.3d 382, 386 (5th Cir. 2003)).

Whether the petitioner has exhausted state remedies is a question of law, which we review de novo. Id.; Morris v. Dretke, 413 F.3d 484, 491 (5th Cir. 2005).

To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal habeas claim to the highest state court. Vasquez v. Hillery, 474 U.S. 254, 257–58 (1986); Morris, 413 F.3d at 491. However, "[t]he habeas applicant need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement." Smith v. Dretke, 422 F.3d 269, 275 (5th Cir. 2005) (citing Lamberti v. Wainwright, 513 F.2d 277, 282 (5th Cir. 1975)); Anderson, 338 F.3d at 386–87 ("[A]s a general rule, dismissal is not required when evidence presented for the first time in a habeas proceeding supplements, but does not fundamentally alter, the claim presented to the state courts." (quotation marks and emphases omitted)). Nonetheless, the exhaustion requirement "is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." Anderson, 338 F.3d at 386. "The exhaustion inquiry . . . is necessarily case and fact specific." Morris, 413 F.3d at 491.

Failure to exhaust generally is a procedural bar to federal habeas review, but the bar may be excused if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); Morris, 413 F.3d at 491–92.

The question here is whether Ries's state habeas claim—that trial counsel was ineffective for failing to "effectively marshal" and to "present" mitigating evidence—fairly presented to the state courts the substance of his federal habeas claims that trial counsel was ineffective for failing to introduce the case for mitigation at voir dire and for failing to adequately argue the case for mitigation in closing. Ries attempts to construe his vague state habeas claim as a broad

challenge to trial counsel's treatment of the mitigation defense at trial, from start (voir dire) to finish (closing).

The district court rejected Ries's effort to construe his state claim so broadly. Despite the broad language used in Ries's state habeas application, the district court concluded that the ineffectiveness challenge based on mitigation that Ries presented to the state courts was focused and specific: that his attorneys should have questioned witnesses more extensively and elicited more detailed testimony on the various exhibits admitted into evidence, which related to Ries's abusive and deprived upbringing. Because the district court concluded that Ries's state habeas claim focused on the actual introduction of mitigating evidence through documentary evidence and witness testimony, the district court reasoned that Ries's federal habeas claims predicated on counsel's alleged deficient handling of the mitigation defense at other stages of the trial, voir dire and closing, were not fairly presented to the state courts. We agree with the district court.

Ries's ineffectiveness claim in state court focused on the introduction of mitigating evidence. Specifically, his application provided:

> Defense counsel clearly were aware of the potentially mitigating evidence in the State's exhibits, yet counsel did nothing to effectively marshal this evidence or subpoena witnesses from Applicant's past . . .
>
> *   *   *
>
> Here, in the instant case, while counsels' [sic] performance may have been satisfactory in the guilt stage of the trial, the grievous error of counsel's failure to provide any mitigation evidence at the punishment stage in light of the clear availability of such evidence falls below a reasonableness standard, and thereby violated Strickland's first prong.
>
> *   *   *
>
> As [the evidence that was admitted] was presented to the jury, it was a big fat file of extensive records . . . presumptively indicating life-long recidivism, an incorrigible refusal to conform, and early

indications of continuing danger. . . . Applicant would show that the global failure of counsel to present any mitigating evidence clearly undermines this verdict, and warrants reversal.[2]

The Texas Court of Criminal Appeals, when presented with Ries's state habeas application, initially denied all of his claims for relief, with one exception: Ries's claim that "he was denied effective assistance of counsel because his trial attorneys failed to present any mitigation evidence at the punishment phase of his trial." Ex Parte Ries, No. 57,892-01, at 2 (Tex. Crim. App. Mar. 3, 2004). The Court of Criminal Appeals remanded with instructions:

> There is nothing in the habeas corpus record to indicate why counsel chose not to present mitigation evidence. Therefore, this cause is remanded to the trial court so that the habeas corpus record can be supplemented with an affidavit from counsel explaining why they chose not to present mitigation evidence at the punishment phase of Appellant's trial.

Id. Counsel subsequently provided that affidavit, explaining all of the evidence of mitigation that was presented throughout the entire course of the trial, at both the guilt-innocence and the penalty phases of the trial. After receiving that affidavit, the Court of Criminal Appeals denied Ries's ineffective assistance claim based on mitigation, stating: "We have reviewed the affidavit and find that Applicant has failed to show that counsel were ineffective." Ex Parte Ries, 57-892-01, at 2 (Tex. Crim. App. May 19, 2004).

Ries did not fairly present to the state courts the substance of his claim that trial counsel was ineffective in failing to explore the issue of mitigation during voir dire. Ries's state habeas application does not mention the issue of

---

[2] As the parties note, as the district court noted, and as we note here, parts of the state habeas application appear to have been taken from another case because certain factual assertions in the state claim, which have been excised from this quotation, do not fit the facts of Ries's case. We agree with the district court that such lapses of state post-conviction counsel are unfortunate in light of the fact that a habeas petitioner cannot raise the ineffectiveness of state post-conviction counsel to avoid any resultant procedural bar. See Martinez v. Johnson, 255 F.3d 229, 240–41 (5th Cir. 2001).

trial counsel's failure to discuss mitigation during voir dire; rather, the state application focuses specifically on the penalty phase of the trial. Also instructive, the Court of Criminal Appeals did not consider or address this voir dire issue. The presentation of mitigating evidence, the critical act on which Ries based his state habeas claim of ineffective assistance of counsel, is not something that Texas courts would likely permit during voir dire. See, e.g., Cadoree v. State, 810 S.W.2d 786, 789 (Tex. App.—Houston [14th Dist.] 1991, writ ref'd) ("Although allowing questions designed to ascertain the juror's views and sentiments on social and moral subjects generally, the courts do not permit a hypothetical case to be submitted; nor do they allow questions designed to bring out juror's views on the case to be tried." (emphasis added)). The presentation of evidence in Texas state courts occurs only after a jury is impaneled, and thus after voir dire occurs. See TEX. CODE CRIM. PRO. Art. 36.01 (detailing the order of proceedings in a criminal trial). For these reasons, the substance of Ries's ineffective assistance claim based on trial counsels' failure to voir dire on mitigation was not fairly presented to the state court. The district court thus correctly concluded that this claim was unexhausted and procedurally barred.

While a closer question, Ries also failed to exhaust his claim that trial counsel was ineffective in arguing the case for mitigation in closing argument. Ries framed his state claim as a challenge to trial counsel's introduction of exhibits and testimony on mitigation at the penalty phase of the trial. Indeed, the claim is specifically addressed to counsel's alleged failure to provide any mitigating evidence, a point on which the Court of Criminal Appeals remanded the case, and the point to which trial counsel's affidavit responds. Regardless, Ries's state habeas application does not mention any specific deficiencies with respect to trial counsel's closing argument; as such, nothing about Ries's state claim would have placed the state courts on notice that Ries was asserting a specific claim based on trial counsel's closing argument.

Moreover, while the issue of ineffective assistance was explored during a state writ hearing, nothing in the transcript of that state hearing indicates that trial counsel's treatment of mitigation in closing argument was at issue.[3] Instead, the transcript indicates that the ineffectiveness claim related to mitigation focused on trial counsel's introduction of exhibits and testimony, not trial counsel's closing argument. Ries did not fairly present to the state courts his claim that trial counsel ineffectively argued mitigation in closing. As such, the district court correctly concluded that this claim was unexhausted and procedurally barred.[4]

In sum, the district court properly dismissed Ries's challenge to trial counsel's use of mitigation at voir dire and discussion of mitigation in closing argument as unexhausted and procedurally barred.[5]

---

[3] The transcript of the state writ hearing was not included in the record considered by the district court. This court granted the State's unopposed motion to supplement the record on appeal to include this transcript, which according to the State, was missing from the record that the district court received from the Texas Court of Criminal Appeals.

[4] This case is distinguishable from Vela v. Estelle, 708 F.2d 954 (5th Cir. 1983), relied on by Ries. There we concluded that allegations asserted in the petitioner's federal habeas petition that were not expressly enumerated in his prior state habeas brief were nevertheless fully exhausted. Id. at 960–61. However, in Vela, the narrower, previously unarticulated allegations fell within the scope of the broad ineffective assistance claim asserted in that case, which had been fairly presented to and decided by the state court. See id. at 959–60. Here, in contrast, Ries's previously unarticulated mitigation claims based on voir dire and closing argument fall outside the scope of his ineffective assistance claim based on the presentation of mitigation evidence, properly construed to refer to the introduction of witness testimony and documentary evidence; there is no indication that the state court considered, much less decided, either the voir dire mitigation claim or the closing argument mitigation claim. As such, the substance of these claims was not fairly presented to the state court.
Ries also relies on Smith v. Dretke, 422 F.3d 269 (5th Cir. 2005). That case, however, involved a request for a Certificate of Appealability and thus merely addressed whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. at 274. Given that case's procedural posture, it offers little guidance.

[5] Ries argues that this procedural default should be excused based on the deficient performance of his state habeas counsel. However, he acknowledges that the ineffective assistance of state habeas counsel cannot provide cause to excuse a procedural default. See Elizalde v. Dretke, 362 F.3d 323, 330 (5th Cir. 2004). He therefore argues instead that his right to competent post-conviction counsel under Texas state law, TEX. CODE CRIM. PRO. Art.

IV

Turning to the merits, Ries's federal habeas petition consists of several claims of ineffective assistance of counsel. These claims are governed by the familiar framework of Strickland v. Washington, 466 U.S. 668 (1984). Ries must establish: (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) that the deficient representation caused prejudice, which requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Williams, 529 U.S. at 390–91 (quoting Strickland, 466 U.S. at 688, 694). Our scrutiny of counsel's performance is "highly deferential" and there is a "strong presumption" that any alleged deficiency "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

A

As discussed above, Ries claims that trial counsel was ineffective in presenting the defense's case for mitigation. He presents this claim as several sub-claims, only one of which is exhausted: trial counsel was ineffective in the presentation of mitigating evidence during the punishment phase of his trial. This claim refers to the manner and means in which Ries's trial counsel

---

11.071 § 2(a), was violated and seeks to establish cause on this basis. See Ex parte Graves, 70 S.W.3d 103, 114 n.45 (Tex. Crim. App. 2002). However, state post-conviction counsel need only be "competent" at the time of appointment, in terms of qualifications, experience, and abilities. Id. at 114. Competence refers only to the initial appointment "rather than the final product of representation." Id. Here, Ries has not shown that his counsel was not competent at the time of appointment. His claim of incompetence is based solely on the state habeas petition his counsel prepared, "the final product of representation." Therefore, even assuming arguendo that Graves applied, an issue we expressly decline to reach, Ries has not satisfied the standard articulated in that case. Ries provides no other basis for excusing this procedural default.

introduced witness testimony and documentary evidence on mitigation during the punishment phase of the trial. We first consider this claim.

Ries claims that his trial counsel was ineffective in presenting mitigating evidence at the penalty phase of his trial. To clarify the scope of this claim, Ries does not argue that his trial counsel failed to investigate and discover mitigating evidence that was essential to Ries's case on punishment. Ries also does not argue that trial counsel failed to "present" mitigating evidence in the sense that specific, material mitigating evidence was never placed before the jury. On the contrary, Ries constructs this claim of ineffective assistance based entirely on exhibits that were actually admitted into evidence and available for the jury's review, including voluminous records from the Texas Child Protective Services ("CPS"), which were admitted into evidence by agreement of the parties. Ries argues that trial counsel used these exhibits ineptly, failing to construct a compelling case for mitigation based on a graphic description of Ries's abuse-filled social history. Ries essentially argues that his counsel could have performed better. Ries also argues that trial counsel's decision to admit the large stack of CPS records and to highlight or ignore specific aspects of that record were not strategic choices to which this court owes any special deference.

However, in an affidavit submitted by Ries's trial counsel to the Court of Criminal Appeals, trial counsel summarized the mitigation evidence presented during the guilt-innocence phase and penalty phase of the trial and stated the belief that the exhibits and witness testimony "gave sufficient evidence to show mitigating factors." As stated in the affidavit, the record contains testimony about factors that could be considered mitigating, including Ries's history of abandonment, neglect, physical and sexual abuse, various adoptions, repeated placements in foster homes or State facilities, his high intelligence, and his college enrollment.

In Strickland, the Supreme Court explained that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91.

Ries challenges whether the decision to admit the stack of CPS records allegedly without careful consideration of the contents of each exhibit constitutes a strategic choice. He offers alternative ways, and in his view better ways, in which his case could have been presented in an apparent effort to show that counsel's failure to make better use of the records can only be attributed to counsel's ignorance of the record's contents, not strategy.

However, trial counsel offered testimony on this issue at a state writ hearing, testimony that undercuts Ries's allegation that trial counsel's decision to admit the voluminous CPS records was not a strategic choice. At the state writ hearing, trial counsel testified that one reason for admitting the entire stack of CPS records was to impress upon the jury, through the sheer weight and volume of the records, Ries's extensive history as a ward of the State. Trial counsel further stated that the witnesses he called were able to sufficiently convey that aspect of mitigating evidence the defense sought foremost to highlight for the jury: Ries's troubled childhood. Calling additional witnesses, trial counsel admitted, might have been counterproductive, resulting in the introduction of evidence harmful to the defense's case. Trial counsel further stated that admitting the entire stack of records was a "gamble," whereby they "took the good with the bad."

In light of this testimony, together with the affidavit submitted by Ries's trial counsel, Ries has failed to overcome the strong presumption that his counsel's alleged deficiency, admitting the entire stack of CPS records without developing certain exhibits, falls within the wide range of reasonable

professional assistance. Indeed, based on the testimony, it appears that the admission of the records, and the emphasis placed on the individual exhibits, was—despite Ries's argument to the contrary—a strategic choice, which under Strickland renders the choice "virtually unchallengeable." See Taylor v. Maggio, 727 F.2d 341, 347–48 (5th Cir. 1984) ("[T]he failure to present a particular line of argument or evidence is presumed to have been the result of strategic choice." (emphasis added)).

Ries nonetheless attempts to fit this case within the facts of Williams v. Taylor, 529 U.S. 362 (2000) and Wiggins v. Smith, 539 U.S. 510 (2003).[6] These cases are distinguishable. Williams and Wiggins both involved counsel's failure to introduce relevant mitigating evidence following a failure to investigate that was not based on reasonable professional judgment. See Wiggins, 539 U.S. at 523 ("[W]e focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background was itself reasonable."); Williams, 529 U.S. at 395–96 ("[Counsel] failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records.").

Unlike Wiggins and Williams, the failure to investigate relevant social history is not at issue here. The claim here boils down to a disagreement with the manner and style in which trial counsel elected to present mitigating evidence, a choice which appears to have been strategic. See, e.g., Coble, 496 F.3d at 441 (concluding that petitioner's reliance on Wiggins and Williams failed where the petitioner was essentially challenging the strategic decisions of counsel).

---

[6] Although Wiggins was decided after Ries's conviction became final, Wiggins applies to the state court's resolution of Ries's claims because Wiggins did not announce "new" law, but merely applied Strickland. Coble v. Quarterman, 496 F.3d 430, 441 n.5 (5th Cir. 2007).

Again, Ries suggests that counsel's decision not to elicit testimony highlighting certain parts of the CPS records was not a strategic choice. Ries argues that the only explanation for trial counsel's failure was that trial counsel did not know what was actually contained within the records. Yet, to support his allegation that trial counsel essentially ignored aspects of the CPS record, Ries offers only his view on better methods for presenting the evidence to the jury. We agree with Ries and the district court that trial counsel might have done more to highlight particular portions of Ries's social history in an effort to elicit more sympathy from the jury based on Ries's past. However, on this record, Ries has failed to overcome the strong presumption that counsel's alleged deficiency falls within the wide range of reasonable professional assistance. As such, we cannot conclude that the state court's resolution of this claim was objectively unreasonable.

As discussed above, Ries's claim that his trial counsel was ineffective in arguing the case for mitigation during closing argument is unexhausted and procedurally barred. But even assuming that claim were exhausted, it nonetheless fails. As the Supreme Court explained in Yarborough v. Gentry:

> [C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. . . . Judicial review of a defense attorney's summation is therefore highly deferential—and doubly deferential when it is conducted through the lens of federal habeas.

540 U.S. 1, 5–6 (2003).

The closing argument was a bit unusual in that defense counsel delivered the closing by speaking directly to Ries. While the closing was hardly a model of excellence, it did highlight potentially mitigating evidence, touching at various points on, among other things, Ries's background of physical and sexual abuse and history of abandonment. The central theme of the argument, however,

15

appears to have been one of acceptance of responsibility. While Ries may now wish that his trial counsel had presented a different closing argument, "[Ries's] desire to have a specific defense theory presented does not amount to ineffective assistance on federal habeas review." Coble, 496 F.3d at 437 (citing Johnson v. Cockrell, 301 F.3d 234, 239 (5th Cir. 2002)). Thus, even assuming that Ries exhausted this claim, it is without merit.

B

Ries next argues that his trial counsel was ineffective for failing to object to two statements during the prosecutor's closing argument, specifically, the prosecutor's rebuttal.

First, addressing Ries directly, the prosecutor stated:

> I have never asked a jury, Joey, to do something that I can't do myself. And on the evidence in this case I can release the poison. You know it and you deserve to die. That's why we're here.

Shortly thereafter, the prosecutor opined:

> Why do we have the death penalty? I know some of you on the jury have thought about the death penalty and why, we as a country and we as a state, believe it's important. I can tell you why I think it is. I believe that when you take a human life, that if you as a society and you as a group of people, do not value the life long enough to take a murderer's life, then you are not going to last very long.

Ries argues that these statements were objectionable under both state and federal law and that his trial counsel was thus ineffective for failing to object. In order to show that counsel was deficient for failing to object under the first prong of Strickland, the objection must have merit. Turner. v. Quarterman, 481 F.3d 292, 298 (5th Cir. 2007).

First, Ries relies on the Supreme Court's decision in United States v. Young, 470 U.S. 1 (1985) to support his claim that the prosecutor's statements were improper under federal law. Young involved a federal prosecution in which

16

the Court applied the plain error doctrine, as embodied in Federal Rule of Criminal Procedure 52(b), to a prosecutor's allegedly improper remarks during summation. Young is an example of the Supreme Court's broad supervisory authority to regulate the conduct of federal prosecutors appearing in federal court. However, Young did not present any federal constitutional issue and contained no indication that the standards it imposed were binding in any way on state courts or state prosecutors. As we have explained, "federal courts may not, in a habeas corpus proceeding, impose the same standards upon state prosecutors that they apply to federal prosecutors in cases on direct appeal." Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985) (per curiam); Whittington v. Estelle, 704 F.2d 1418, 1422 (5th Cir. 1983). Because Young does not apply to state courts, Ries's trial counsel was not deficient for failing to assert an objection on the basis of Young. Likewise, Young cannot be used to challenge the decision of the state habeas court.[7]

---

[7] There is a line of federal authority addressing federal due process challenges to statements made during a prosecutor's summation. See Darden v. Wainwright, 477 U.S. 168, 180 (1986); Caldwell v. Mississippi, 472 U.S. 320, 337–38 (1985); Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988) (explaining this "generic substantive due process violation"). While the states are free to develop their own standards to govern the conduct of state prosecutors, the due process clause of the Fourteenth Amendment provides an independent check on a prosecutor's comments that "so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process." Rogers, 848 F.2d at 608 (quoting Darden, 477 U.S. at 181) (alteration in original); see also Whittington, 704 F.2d at 1422 (noting that while a federal habeas court may not impose federal supervisory standards on state courts, "we can and are required to make an independent determination of what is fair under the Constitution").

In this case, however, the petitioner has not invoked this line of authority or argued that the prosecutor's comments were so egregious as to violate due process. Regardless, while the prosecutor's statements may have been dramatic, we cannot conclude that the statements so infected the trial with unfairness as to make the resulting conviction a denial of due process, particularly where, as we explain below, the prosecutor's comments were to some extent invited by defense counsel's summation. See Darden, 477 U.S. at 182 ("[T]he idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole."). This case is a far cry from Caldwell, for example, where the prosecutor argued to the jury that its decision was not a final one because the decision could be automatically reviewed by the state Supreme Court, thus inviting the jury to minimize its sense of responsibility for determining the appropriateness of death and rendering the death sentence

We also cannot conclude that trial counsel was ineffective for failing to object under Texas state law. With respect to the prosecutor's first statement, expressing his personal opinion that Ries "deserve[d] to die," the district court concluded that this statement was invited by the closing argument of defense counsel, and therefore, had counsel objected, the objection would have been overruled as invited error.[8] See, e.g., Hannah v. State, 624 S.W.2d 750, 754 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd) (concluding that prosecutor's statement was invited by defense counsel's argument and therefore the objection to the statement was properly overruled) ("My job as a prosecutor is to seek justice. I dismiss cases when there is not sufficient evidence to support what has occurred."). The style and structure of defense counsel's closing argument, a one-sided conversation with the defendant, invited the prosecutor to employ the same rhetorical device and speak directly to the defendant. Also, as the district court noted, defense counsel's statements such as "I'm going to ask the twelve people to give you the rest of your life to explore your potential and to use it" and "I hope you will be given that opportunity" injected—at least to some extent—defense counsel's own personal opinion, inviting the prosecutor to do the same. Finally, the Texas Court of Criminal Appeals has found no reversible error based on similar statements made by prosecutors in summation. Myers v. State, 468 S.W.2d 847, 848–49 (Tex. Crim. App. 1971) ("Now, I would be a charlatan or a hypocrite to ask you to do something that I didn't feel deep in my heart was justified, and I wouldn't ask you to do anything I couldn't do."); Lacy v. State, 374 S.W.2d 244, 245 (Tex. Crim. App. 1964) ("I believe from the evidence presented here that the Defendant is guilty."). In light of these considerations, Ries's trial counsel was not deficient for failing to object to the

---

imposed in that case fundamentally unfair. 472 U.S. at 325–26, 341.

[8] The state court never expressly ruled on this statement; nonetheless, the district court deemed the claim exhausted and addressed it on the merits, as do we.

prosecutor's first comment. Likewise, because the objection was of questionable merit, Ries has not shown a reasonable probability that the objection would have been sustained. Ries's trial counsel thus was not ineffective for failing to object to the prosecutor's first statement.

As to the prosecutor's second statement ("Why do we have the death penalty?"), the state court determined under state law that the statement was proper as a plea for law enforcement. "[I]n our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law." Young v. Dretke, 356 F.3d 616, 628 (5th Cir. 2004). Accepting the state court's conclusion based on state law that the objection had no merit, counsel was not ineffective for failing to make it.

We neither condone nor condemn the prosecutor's comments, and we take no position on whether those comments would be proper as a matter of federal trial practice. However, we conclude that the state court's determination that Ries failed to establish ineffective assistance based on trial counsel's failure to object to the prosecutor's comments was not objectively unreasonable.

C

Finally, Ries argues that his appellate counsel was ineffective for failing to challenge on appeal the trial court's exclusion of evidence of Ries's remorse.

The Strickland analysis also applies to claims of ineffective assistance of appellate counsel. Amador v. Quarterman, 458 F.3d 397, 411 (5th Cir. 2006); United States v. Reinhart, 357 F.3d 521, 525 (5th Cir. 2004). "Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." Schaetzle v.

Cockrell, 343 F.3d 440, 445 (5th Cir. 2003) (internal quotation marks and alterations omitted).

Ries argues, in essence, that appellate counsel failed to raise a slam dunk issue on appeal—an issue that was properly preserved, plainly meritorious, and would have resulted in a reversal of his sentence. We reject Ries's argument because we disagree that the issue was properly preserved.

During the guilt-innocence phase of Ries's trial, the State sought to introduce a video-taped confession by Ries, in which the State redacted the apology portion of his confession (that part containing Ries's expression of remorse) and several references to extraneous offenses. Defense counsel objected to redaction of the apology portion, but the trial court overruled the objection, concluding that it was a self-serving hearsay statement. Ries does not argue in his opening brief that the redaction of the apology portion was improper for guilt-innocence purposes.[9]

Instead, Ries argues that the redaction was improper because the apology portion of the tape constituted highly relevant and reliable mitigating evidence that should not have been excluded on the basis of a state hearsay rule. See Green v. Georgia, 442 U.S. 95, 97 (1979) (per curiam). Ries argues that the exclusion of this evidence of remorse precluded him from presenting this relevant mitigating evidence during the penalty phase of his trial. Exacerbating the issue, Ries points out that at the penalty phase of the trial, during the

---

[9] Ries does, however, seem to challenge the guilt-innocence phase ruling in his reply brief, arguing that the redacted apology portion of the video also included a statement that Ries had no intention of killing his victim. Because Ries raises this argument for the first time in his reply brief, we consider it waived. See United States v. Fields, 483 F.3d 313, 352 n.36 (5th Cir. 2007). In any event, a challenge to the state court's ruling for guilt-innocence purposes was not so clearly meritorious as to form a basis for an ineffective assistance of appellate counsel claim. See, e.g., Allridge v. State, 762 S.W.2d 146, 152–53 (Tex. Cr. App. 1988) (en banc) (concluding that the rule of "completeness," which applies when other evidence presented has been incomplete or misleading, did not apply to admit the defendant's self-serving hearsay testimony).

State's closing argument, the prosecutor relied on portions of Ries's confession, while making several references to Ries's lack of remorse. Ries argues that he was "hamstrung" by the trial court's exclusion of the apology portion of his confession, unable to effectively rebut the prosecutor's argument about lack of remorse.

At no point, however, did Ries ever object to the redaction on the grounds that the district court impermissibly excluded relevant mitigating evidence at the penalty phase of the trial. Ries also never objected to the prosecutor's statements regarding lack of remorse and never sought to introduce the apology portion during the penalty phase of his trial as mitigating evidence or to rebut the prosecutor's statement regarding lack of remorse. As the State points out, Ries conflates the trial court's guilt-innocence-redaction ruling with his argument that the redaction ruling was improper for purposes of the penalty phase of the trial because it excluded relevant mitigating evidence. Although Ries preserved an objection to the guilt-innocence redaction ruling, he failed to present to the trial court his argument that the redaction violated his right to present mitigating evidence and thus did not clearly preserve any penalty-phase objection for appeal.[10]

Because any challenge to the trial court's guilt-innocence ruling regarding the redacted apology portion of the confession was of dubious merit, and because the penalty-phase objection was not clearly preserved, we cannot conclude that the state's rejection of Ries's ineffective assistance of appellate counsel claim for failing to raise this issue on appeal was objectively unreasonable.

V

---

[10] Ries failed to allege any ineffective assistance of counsel claim based on trial counsel's failure to object during the penalty phase of the trial to the redaction of the apology portion of the confession.

For these reasons, we **AFFIRM** the district court's denial of Ries's petition for a writ of habeas corpus.